**GORDON REES SCULLY MANSUKHANI, LLP**
Douglas E. Motzenbecker
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Telephone: (973) 549-2500
Facsimile: (973) 377-1911
Email: dmotzenbecker@grsm.com
*Attorneys for Defendants 190 Main Street Associates, L.L.C., J.P. Management, L.L.C. (i/p/a JP Management Group, LLC), John Pjeternikaj Sr., and John Pjeternikaj Jr.*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY DIAZ, individually, and on behalf of others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>190 MAIN STREET ASSOCIATES, L.L.C., JP MANAGEMENT GROUP, LLC, JOHN PJETERNIKAJ SR., and JOHN PJETERNIKAJ JR.,<br><br>*Defendants*. | Civil Action No. 2:19-cv-00127-JMV-JAD |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS 190 MAIN STREET ASSOCIATES, L.L.C., J.P. MANAGEMENT, L.L.C., JOHN PJETERNIKAJ SR., AND JOHN PJETERNIKAJ JR. TO APPROVE SETTLEMENT**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF THE COMPLAINT ........................................................................................ 2

ARGUMENT ............................................................................................................................ 2

    I.    The Agreement executed by the parties is a fair and reasonable solution of a bona fide dispute with respect to Plaintiff's FLSA claims. ................................. 2

        A.    The Settlement Concerns A Bona Fide Dispute .......................................... 3

        B.    The Settlement Is Fair and Reasonable To Diaz......................................... 7

CONCLUSION......................................................................................................................... 8

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 (S.D.N.Y. Apr. 2, 2013) ............................... 7

*Bettger v. Crossmark, Inc.*,
   No. 13-2030, 2015 U.S. Dist. LEXIS 7213 (M.D. Pa. Jan. 22, 2015) ....................................... 3

*Caver v. City of Trenton,*
   420 F.3d 243 (3d Cir. 2005) ...................................................................................................... 5

*Chillogallo v. John Doe LLC #1*,
   No. 15-537, 2018 U.S. Dist. LEXIS 170046 (D.N.J. Oct. 1, 2018) .......................................... 3

*Corning Glass Works v. Brennan*,
   417 U.S. 188 (1974) .................................................................................................................. 3

*Crabtree v. Vokert, Inc.*,
   No. 11-0529, 2013 U.S. Dist. LEXIS 20543 (S.D. Ala. Feb. 14, 2013) ................................... 7

*Dominguez v. Costco Wholesale Corp.*,
   2009 U.S. App. LEXIS 27548 (3rd Cir. Dec. 15, 2009) .............................................................. 5

*Gabrielyan v. S.O. Rose Apts. LLC*,
   No. 15-cv-1771, 2015 U.S. Dist. LEXIS 135615 (D.N.J. Oct. 5, 2015) ................................... 7

*Green v. Ventnor Beauty Supply, Inc.*,
   No. 1:18-cv-15673, 2019 U.S. Dist. LEXIS 81312 (D.N.J. May 14, 2019) .............................. 7

*Kapolka v. Anchor Drilling Fluids, LLC*,
   No. 2:18-cv-01007, 2019 U.S. Dist. LEXIS 182359 (W.D. Pa. Oct. 22, 2019) ........................ 7

*Lawrence v. City of Philadelphia*,
   527 F.3d 299 (3d Cir. 2008) ...................................................................................................... 3

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ................................................................................................. 2

*Malkovskiy v. Shaw Grp., Inc.*,
   2012 U.S. Dist. LEXIS 199596 (D.N.J. Jun. 29, 2012) ............................................................ 4

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .................................................................................................................. 4

*Nieves v. Top Notch Granite & Marble LLC*,
   2011 U.S. Dist. LEXIS 78252 (D.N.J. July 19, 2011) .............................................................. 5

*Rabbenou v. Dylan Foods, Ltd.*,
  No. 17-1330, 2017 U.S. Dist. LEXIS 122055 (D.N.J. Aug. 3, 2017) ................................. 2, 3, 5

*Smith v. Johnson & Johnson*,
  593 F.3d 280 (3d Cir. 2010) ............................................................................................... 4

*Thompson v. Real Estate Mortgage Network, Inc.*,
  106 F. Supp. 3d 486 (D.N.J. 2015) .................................................................................... 5

*Zalinskie v. Rosner Law Offices, P.C.*,
  2014 U.S. Dist. LEXIS 31819
  (D.N.J. Mar. 12, 2014) ................................................................................................... 4, 5

**Statutes**

29 U.S.C. § 201 ............................................................................................................................. 1

29 U.S.C. § 207 ............................................................................................................................. 3

29 U.S.C. § 213 ............................................................................................................................. 3

29 U.S.C. § 215(a)(3) .................................................................................................................... 4

N.J. STAT. ANN. § 34:11-56a4 ................................................................................................... 1, 5

N.J. STAT. ANN. § 34:19-3(c) ........................................................................................................ 5

N.J. STAT. ANN. §§ 34:19-1 to -8. ................................................................................................. 1

**PRELIMINARY STATEMENT**

In accordance with the Order entered November 4, 2019, *see* ECF No. 20, defendants 190 Main Street Associates, L.L.C., J.P. Management, L.L.C., John Pjeternikaj Sr., and John Pjeternikaj Jr. ("Defendants") hereby move to formally request that the Court approve the Settlement Agreement and Release (the "Agreement") that the parties have executed and submitted to the Court for its review.

Defendants employed Plaintiff Anthony Diaz ("Plaintiff" or "Diaz") as a Resident Manager whose job responsibilities included managing a six-building, 242-unit apartment complex in Paterson, New Jersey known as Kent Village. Plaintiff alleges that during his course of employment, he regularly worked more than 40 hours per week and that Defendants were required, but failed, to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New Jersey Wage and Hour Law ("NJWHL"), N.J. STAT. ANN. § 34:11-56a4. Plaintiff further alleges that after he complained about the failure to pay overtime wages, Defendants terminated him in retaliation, thereby violating the FLSA and New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. STAT. ANN. §§ 34:19-1 to -8.

Although the parties reached a settlement before discovery was completed, defense counsel conducted an investigation of Plaintiff's claims and ascertained critical facts that would have afforded Defendants with a strong opportunity to refute the allegations. Defendants contend that Plaintiff was an administrative employee who would be exempt from overtime wages under the FLSA and NJWHL and that he did not actually work more than 40 hours per week. Defendants further contend that Plaintiff was terminated due to his poor performance, not in retaliation for any complaints made regarding overtime wages. Following an arm's length negotiation through

counsel, the parties reached a settlement. Defendants respectfully submit that the Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

## SUMMARY of the COMPLAINT

Plaintiff alleges that Defendants employed him as a superintendent from approximately April 2016 to January 10, 2018 earning a rate of pay of $20 per hour. He further alleges that his job duties included providing maintenance and repairs to Defendants' properties. Plaintiff claims that he worked more than 40 hours per week and that Defendants violated the FLSA by failing to pay him overtime wages at a rate of not less than 1.5 times his regular pay. In December 2017, Plaintiff claims to have complained about Defendants' failure to pay overtime wages. As a result of these complaints, Plaintiff claims that Defendants terminated his employment on January 10, 2018. Plaintiff seeks lost wages, front pay, liquidated damages, punitive damages, attorneys' fees, and costs.

## ARGUMENT

**I.  The Agreement executed by the parties is a fair and reasonable solution of a bona fide dispute with respect to Plaintiff's FLSA claims.**

Defendants submit that the Agreement is a fair and reasonable solution of a bona fide dispute over FLSA provisions. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Rabbenou v. Dylan Foods, Ltd.*, No. 17-1330, 2017 U.S. Dist. LEXIS 122055, at *2 (D.N.J. Aug. 3, 2017) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Although the Third Circuit has not addressed whether [FSLA] actions claiming unpaid wages may be settled privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary." *Chillogallo v. John Doe LLC #1*, No.

15-537, 2018 U.S. Dist. LEXIS 170046, at *2-3 (D.N.J. Oct. 1, 2018) (quoting *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 U.S. Dist. LEXIS 7213, at *9 (M.D. Pa. Jan. 22, 2015)). A district court may approve the proposed settlement if it "a fair and reasonable solution of a bona fide dispute over FLSA provisions. Accordingly, courts must determine whether (i) the settlement concerns a bona fide dispute; (ii) the settlement is fair and reasonable to the Plaintiff-employee." *Rabbenou*, 2017 U.S. Dist. LEXIS, at *2 (citation omitted).

### A. The Settlement Concerns A Bona Fide Dispute

In *Rabbenou*, the court approved a settlement agreement that resolved a bone fide dispute with respect to whether the plaintiff could recover for unpaid wages. *Id.* at *2-3. The plaintiff alleged that the defendants failed to pay him overtime wages while the defendants argued that plaintiff was exempt from overtime pay. *Id.* at *3. A bona fide dispute existed as to whether the plaintiff had a viable FLSA claim. *Id.* at *3. Before concluding that the settlement agreement was also fair and reasonable, the court noted that the plaintiff was "adequately represented by counsel from the inception of this litigation until the settlement was reached." *Id.* at *3.

Under the FLSA, an employee who works more than 40 hours per week is entitled to overtime pay unless he or she falls within one of the statute's specific exemptions, which include employees that perform bona fide executive, administrative, or professional services. *See* 29 U.S.C. §§ 207, 213. The exemptions are construed narrowly and against the employer. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "Specifically, an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes '*plainly and unmistakably*' within the exemption's terms." *Id.* at 310 (emphasis in original; citation omitted); *accord Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (holding that an employer has the burden of proving that the employee was exempt).

3

For an employee to be ineligible for overtime compensation, the employer must satisfy a two-step test: *first*, the employee must be performing duties that qualify as a professional, executive, or administrative in nature; and, *second*, the employer must pay the employee at least $455 a week, which is not subject to offset or reduction because of the quantity or quality of the employee's work. *See Malkovskiy v. Shaw Grp., Inc.*, 2012 U.S. Dist. LEXIS 199596, *8-9 (D.N.J. Jun. 29, 2012) (citations omitted). The FLSA provides that an administrative employee is one who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (citing 29 C.F.R. § 541.200).

The FLSA prohibits "any person" from retaliating against employees who exercise rights protected under the statute. *See* 29 U.S.C. § 215 (a)(3). When such a claim is asserted, it is analyzed under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zalinskie v. Rosner Law Offices, P.C.*, 2014 U.S. Dist. LEXIS 31819, *12 (D.N.J. Mar. 12, 2014). To assert a successful retaliation claim under the FLSA, Diaz must establish a prima facie case that: (a) he engaged in protected activity; (b) his employer took an adverse employment action (e.g., termination); and (c) the adverse employment action was causally related to the protected activity. *Id.* at *12-13. After Diaz establishes a prime facie case, the burden would shift to Defendants to set forth a non-discriminatory reason for the decision to terminate. *Id.* at *13. After Defendants demonstrated that their decision was not discriminatory, the burden of production

would return to Diaz to prove that Defendants' stated reason was only pretext and not the real reason for its actions. *Id.* at *13-14.

The NJWHL was intentionally drafted to parallel the duties, obligations, and remedies of the FLSA. *See Thompson v. Real Estate Mortgage Network, Inc.*, 106 F. Supp. 3d 486, 490 (D.N.J. 2015). Under the NJWHL, employers are required to pay at least the federal minimum hourly wage rate set by the FLSA. N.J. STAT. ANN. § 34:11-56A4. However, a plaintiff cannot recover under both the FLSA and the NJWHL since a recovery under the NJWHL would duplicate a recovery under the FLSA. *Nieves v. Top Notch Granite & Marble LLC*, 2011 U.S. Dist. LEXIS 78252, *7-8 (D.N.J. July 19, 2011).

To state a claim under CEPA, a plaintiff must allege that: (a) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (b) he or she performed a whistleblowing activity described in the statute; (c) an adverse employment action was taken against him or her; and (d) a causal connection exists between the whistleblowing activity and the adverse employment action. *See Caver v. City of Trenton,* 420 F.3d 243, 254 (3d Cir. 2005) (citation omitted). "Under CEPA, it is unlawful for an employer to retaliate against an employee because the employee discloses an activity of the employer that the employee reasonably believes is in violation of a law or is fraudulent or criminal." *Dominguez v. Costco Wholesale Corp.*, 2009 U.S. App. LEXIS 27548, *4 (3rd Cir. Dec. 15, 2009) (citing N.J. STAT. ANN. § 34:19-3(c)).

The proposed settlement of the within matter is a fair and reasonable solution of a bona fide dispute. Similar to the circumstances in *Rabbenou*, Diaz alleges that Defendants failed to pay him overtime wages while Defendants maintain that Diaz was exempt from overtime pay as an administrative employee and, had this matter proceeded, would have contested liability.

5

Defendants have witnesses prepared to testify that Diaz's day-to-day activities consisted primarily of performing administrative functions at the complex and, to a far lesser extent, physical activity or manual labor and that four maintenance employees would have greatly assisted Diaz in performing repairs and maintenance at the site. To this end, defense counsel has interviewed one of the maintenance workers who confirmed that Diaz seldom performed manual or physical labor, and that he delegated these duties to the maintenance workers (or other employees).

Moreover, Defendants have witnesses prepared to testify that Diaz rarely, if ever, worked more than 40 hours per week. Specifically, these witnesses would testify that Diaz regularly worked a fixed schedule, typically from 8:30 a.m. to 5:00 p.m. with a half-hour break for lunch, but would spend his lunch break in his apartment and often took more than a one-hour lunch, and played paddle ball practically every day after work. Not only would Defendants challenge Diaz's claim that he was entitled to overtime wages, they would contest his claim that he worked more than 40 hours per week.

Furthermore, Defendants have witnesses prepared to testify that Diaz was terminated for his poor performance. Such testimony would include a discussion of the disciplinary notice that Diaz received in August 2017 stating that he failed to: (a) schedule work activities for himself and his assistant; (b) schedule work for himself and his assistant; (c) complete work orders at all, or, at the very least, on a timely basis; (d) keep appointments he had previously made with tenants, or at least say he would need to reschedule the appointment; and (e) contact tenants to schedule the completion of the work in question. It would also include a discussion of his poor performance shortly before his termination.

Accordingly, a bona fide dispute exists as to whether Diaz can present any viable claims.

## B. The Settlement Is Fair and Reasonable To Diaz

"When the proposed settlement results from arm's length negotiation between counsel, the Court begins with a 'strong presumption in favor of finding [the] settlement fair[.]'" *Kapolka v. Anchor Drilling Fluids, LLC*, No. 2:18-cv-01007, 2019 U.S. Dist. LEXIS 182359, at *3 (W.D. Pa. Oct. 22, 2019) (as appears in original) (quoting *Crabtree v. Vokert, Inc.*, No. 11-0529, 2013 U.S. Dist. LEXIS 20543, at *7 (S.D. Ala. Feb. 14, 2013)). Moreover, courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637, at *13 (S.D.N.Y. Apr. 2, 2013) (citation and internal quotation marks omitted).

When determining whether to approve a proposed settlement, the court must also consider whether it frustrates the purposes of the FLSA. In *Gabrielyan v. S.O. Rose Apts. LLC*, No. 15-cv-1771, 2015 U.S. Dist. LEXIS 135615, at * 6 (D.N.J. Oct. 5, 2015), the court noted that the defendants consistently denied any allegations of wrongdoing; "Thus, resolution of these claims through trial would be expensive and difficult for Plaintiff."

The fact that attorneys' fees and costs may be disproportionate to the amount the plaintiff actually receives does not prevent approval of a settlement agreement. In *Green v. Ventnor Beauty Supply, Inc.*, No. 1:18-cv-15673, 2019 U.S. Dist. LEXIS 81312, at *5 (D.N.J. May 14, 2019), the court concluded that it had "no reason to question the reasonableness of the amount of attorneys' fees and costs" and cited the following case law:

> *See Punter v. Jasmin Intern. Corp.*, 2014 WL 4854446, at *8 (D.N.J. 2014)($17,685.00 in attorney's fee reasonable for FLSA settlement totaling $27,620); *Joseph v. Caesar's Entertainment Corp.,* 2012 WL 12898816, at *3 (D.N.J. 2012)($20,288.50 in fees and costs reasonable for FLSA settlement award of $29,611.50); *Cox v. Elite Energy LLC*, 2011 WL 4406364, at *6 (D.N.J. 2011)(noting that FLSA claims may involve relatively small monetary awards, and a court "should not reduce a fee award solely on the basis that the

7

> attorney's fees are disproportionate to the damage award"); see also *Joseph*, 2012 WL 12898816, at *2 ("If the parties submit a proposed FLSA settlement and represent that the plaintiff's attorneys' fees was agreed upon separately and without regard to the amount paid to the plaintiff, then the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." (citations and quotations omitted)).

In the within matter, the Agreement provides a fair and reasonable resolution of Diaz's claims. The parties agree that Diaz earned $800 per week during most of his 21-month employment although Defendants contend that this pay constitutes a salary for which he would not be entitled to overtime wages. Nevertheless, Defendants are prepared to pay Plaintiff, and Plaintiff is prepared to accept, the following to settle this matter: $10,250 in wages, $10,250 in liquidated damages, and $26,500 in attorneys' fees. Therefore, Plaintiff would actually receive $20,500. Taking into account the bona fide dispute as to whether Plaintiff would be legally entitled to any overtime wages, the short period of time that Plaintiff worked for Defendants (less than two years), and the factual dispute as to whether Plaintiff worked more than 40 hours per week, the settlement terms are fair and reasonable.

Furthermore, counsel represented Diaz from the inception of this litigation until the settlement. The settlement, having resulted from an arm's length negotiation between the parties' attorneys, may be deemed fair, reasonable, and in Plaintiff's best interests.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court approve the Agreement and dismiss this action with prejudice and without costs, except as provided in the Agreement.

Dated: November 20, 2019

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**
Attorneys for Defendants
*190 Main Street Associates, L.L.C., JP Management Group, L.L.C., John Pjeternikaj Sr., and John Pjeternikaj Jr.*

By: *s/ Douglas E. Motzenbecker*
Douglas E. Motzenbecker
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Telephone: (973) 549-2500
Fax: (973) 377-1911
Email: dmotzenbecker@grsm.com